RECEIVED
CLERK'S OFFICE
2007 MAR 20 P 2 23
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: KUGEL MESH HERNIA PATCH PRODUCT LIABILITY LITIGATION | MDL Docket No. 1842 |

**RESPONSE OF C.R. BARD, INC. AND DAVOL INC. TO PLAINTIFFS' MOTION FOR TRANSFER, COORDINATION, AND CONSOLIDATION OF RELATED ACTIONS TO <u>THE DISTRICT OF RHODE ISLAND PURSUANT TO 28 U.S.C. § 1407</u>**

C.R. Bard, Inc. and Davol Inc. ("Bard") oppose plaintiffs' motion for transfer, coordination, and consolidation of cases pursuant to 28 U.S.C. § 1407. Set forth below, pursuant to Rule 7.1(b) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, are Bard's specific responses to the averments made in plaintiffs' motion.

1. Bard admits that in each of the cases proposed for consolidation, with the exception of the *Campbell* matter, there are allegations that Bard defectively designed and/or manufactured the Composix® Kugel® hernia patch. *Campbell* does not involve a Composix® Kugel® hernia patch, but rather a Kugel® patch, a different product, which was designed and manufactured by someone other than Bard.[1] Bard denies that the remaining cases "arise out of

[1] Bard acquired the Kugel® hernia patch product line from Surgical Sense, Inc. on January 26, 2000 in an asset purchase transaction. After this acquisition, Surgical Sense continued under the name WCO Medical Products Corporation. Both entities are parties to the *Campbell* matter.

the same conduct and allege similar claims" as each case involves individual questions of fact thus precluding consolidation. For example, two of the personal injury cases claim injury due to a ring weld break – the subject of the product recalls prominently described in movants' Memorandum of Law – and the rest do not; movants' own case not only involves no allegation of ring break, but claims that the movants have not been physically injured in *any* way by a Composix® Kugel® Patch product.

2. Denied. Bard states the attached Case Chart contains the pending federal cases in which allegations are made against Bard or Davol concerning Composix® Kugel® Patch product.

3. Denied. Consolidation is not necessary in these cases. Bard further states, in the event the Panel determines consolidation is warranted, that the District of Rhode Island is an inappropriate forum and proposes that the Eastern District of Missouri is better suited to address pretrial management of these cases.

4. Denied. As set forth more fully in its accompanying memorandum, the federal actions do not involve common factual and legal issues, and the parties would be best served by having the individual cases proceed in their respective districts as they are currently.

5. Denied. *Carter*, *Edgar*, and *Wilson* are in the midst of discovery with document production undergoing. To disrupt the progress the parties have made in these cases would unduly prejudice the parties.

6. Denied. As set forth more fully in its accompanying memorandum, consolidation will hinder the progress of these cases and unduly prejudice the individual plaintiffs.

7. Denied.

8. Bard lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 8, and therefore denies the same.

WHEREFORE, Bard respectfully requests that this Panel deny plaintiffs' motion for transfer.

Date: March 20, 2007

Respectfully Submitted,

Joe Hollingsworth / by KTG

Joe G. Hollingsworth, DC Bar No. 203273
Kirby T. Griffis, DC Bar No. 453091
William J. Cople III, DC Bar No. 384984
SPRIGGS & HOLLINGSWORTH
1350 I Street N.W.
Washington, DC 20005
(202) 898-5800
(202) 682-1639 (fax)

Attorneys for Defendants
C.R. BARD, INC. and DAVOL INC.

RECEIVED
CLERK'S OFFICE
2007 MAR 20 P 3:23
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: KUGEL MESH HERNIA PATCH LITIGATION | ) | MDL Docket No. 1842 |

**DEFENDANTS C.R. BARD, INC. AND DAVOL INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER, COORDINATION, AND CONSOLIDATION OF ACTIONS**

Defendants C.R. Bard, Inc. and Davol Inc. respectfully submit this memorandum of law in opposition to Plaintiffs Sonia Montiel and Carol Nunes-McNamara's motion to transfer federal cases involving the Composix® Kugel® Patch to a single MDL panel for coordinated and consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1407.

Fifteen months after a widely-publicized voluntary recall of certain product models of the Composix® Kugel® Patch, only twelve actions are pending in federal district courts relating to this product. *See* n.2, *infra*. Consolidation of these cases is not justified. There is no indication that transfer would allow greater efficiency in discovery or pretrial practice or would serve the interests of convenience or justice. Indeed, there is every reason to believe that, because of the number of unique factual issues in each claim, the cases can be best managed and resolved in their current postures, by the individual courts and with appropriate coordination among counsel. As an example of the disparities between these cases, the movants claim that they were *not* injured by the Composix® Kugel® Patch, and instead want medical monitoring against the

possibility of some future injury, but the plaintiffs in the other eleven lawsuits all claim some actual physical injury. Because they have failed to meet their burden under 28 U.S.C § 1407, movants' transfer motion should be denied.

Should the Panel determines that an MDL is warranted (and it is not), the District of Rhode Island, which movants urge, is not the appropriate court for several reasons we explain below.

## FACTUAL BACKGROUND

### I. The Composix® Kugel® Patch

The Composix® Kugel® Patch (the "Patch") comprises a product line of nine prescription medical devices manufactured by Davol, a subsidiary of Bard. The various models are used to surgically repair soft-tissue defects, most commonly incisional hernias of the abdominal region. As the name suggests, "incisional" hernias are those caused by the failure of the integrity of a prior surgical repair (*i.e.*, an incision). To repair those hernias, the Patch is placed underneath the failed tissue and against the bowel. The Patch has two surfaces, an expanded polytetrafluoroethylene (ePTFE) layer which faces the bowel and is designed to minimize tissue adhesions between bowel and device, and a polypropylene mesh layer which is designed to promote tissue ingrowth and thus a strong repair. Because the surgeon must pass the Patch through the smallest possible opening, whether implanting it directly or laparoscopically, the Patch also has one or two polyethylene terephthalate (PET) memory recoil rings. The rings allow the Patch to be rolled tightly enough to pass through a small surgical incision or a laparoscopic port, and then to redeploy into its original position so that it can be sutured or stapled in place. The rings are manufactured from PET material that is cut to length and then ultrasonically welded to itself to form a closed loop.

Davol and Bard voluntarily recalled three of the nine Patch product models fifteen months ago, on December 22, 2005, and three additional models on March 17, 2006, following reports that suggested that the ring welds could fail, causing the ring to break.[1] Three models were never subject to the recalls.

## II. The Pending Federal Actions

In the fifteen months since Bard and Davol voluntarily initiated the first recall, only eleven federal lawsuits have been filed in which a plaintiff claims personal injury due to a Patch.[2] These suits involve distinct facts, claims, and allegations, as set forth in chart form in Attachment A. Most notably, *Montiel*, the case with which the movants want the other eleven consolidated, is the only federal case in which the plaintiffs claim *not* to have suffered any physical injury. Instead, movants seek for themselves (and for a putative class) medical monitoring for injuries that might manifest in the future.

Although the cases all followed sharply on the heels of the recalls of various Patch models due to reports of ring weld breaks – and although movants' MDL motion centers on ring breaks, *see* Mem. at 3 – ring breaks are not at issue in the majority of the federal personal injury actions. In seven of the eleven suits where plaintiffs claim a physical injury – *Carter, Poston, Luffman, Hyland, Katechis, Sayler,* and *Hall* – no ring break is alleged. In two other federal actions – *Edgar* and *Wilson* – the allegations are ambiguous. *See Edgar* Compl. ¶ 10 (patches

[1] On January 10, 2007, Davol recalled additional lots of the same models recalled on March 17, 2006.

[2] Movants erroneously list *Campbell v. Davol, Inc. et al.*, No. 5:06-cv-5154 (W.D. Ark.), in their Schedule of Actions. In *Campbell*, the plaintiff claims injury due to a "Kugel Patch," a different medical device than the "Composix® Kugel® Patch." *See Campbell* Compl. ¶ 15. Movants also initially sought to transfer *Gleber v. C.R. Bard, Inc., et al.*, No. 2:06-cv-5837 (E.D. La.), which also involves a different product, but have since deleted *Gleber* from their Schedule of Actions. Not listed on plaintiffs' Schedule of Actions are *Hyland v. Davol et al.*, No. 07-cv-1054 (E.D.N.Y.), *Katechis v. Davol et al.*, No. 07-cv-2098 (S.D.N.Y.), *Sayler v. Davol et al.*, No. 1:07-cv-0765 (N.D. Ohio), and *Hall v. Davol et al.*, No. 07-cv-00480 (N.D. Ala.).

"failed"); *Wilson* Compl. ¶ 10 (patch "has since failed and/or broken"). Only two cases – *Von Essen* and *Mathein* – actually allege ring break.

Furthermore, the actions involve different models of the Patch. Already it is clear that this key fact will vary from case to case. For example, the Patch model at issue has been identified in five of the eleven cases claiming physical injury: the *Carter* case involves a model 206 Patch, *Hyland* and *Sayler* a model 202 Patch, *Hall* a 208 patch, and *Edgar* both a model 207 and 208 Patch. These Patches were designed and developed at different times, involve different regulatory histories, and were voluntarily recalled by Bard and Davol at different times.[3] As set forth in the recall notices, they also have substantially different reported rates of ring break, which will cause the ring break cases to vary significantly from one another in terms of relevant evidence; similar differences are likely to exist between the models in terms of whatever specific product failure plaintiffs may assert in the non-ring break cases.

The plaintiffs in each of the eleven pending federal personal injury cases assert significantly different claims under the laws of ten various states. In four cases, the plaintiffs

[3] The nine product models of the Patch are as follows:

| Product code | Product | Size (inches) | Rings |
|---|---|---|---|
| 201 | Small Oval | 3.1 x. 4.7 | 1 |
| 202 | Large Oval | 5.4 x 7 | 1 |
| 203 | Small Circle | 3.0 | 1 |
| 204 | Large Circle | 4.5 | 1 |
| 205 | Medium Oval | 4.3 x 5.5 | 1 |
| 206 | XL | 8.0 x 10.7 | 2 |
| 207 | XL | 10.8 x 13.7 | 2 |
| 208 | XL | 7.0 x 9.7 | 2 |
| 209 | Oval | 6.3 x 12.3 | 2 |

As set forth in a voluntary recall letter that Bard and Davol issued on March 24, 2006, 31 memory recoil ring breaks had been reported in the three extra-large patch sizes (model numbers 206, 207, and 208), for a reported rate of 0.109%; three ring breaks were reported in the large oval size (product model 202), for a reported rate of 0.0125%; and no ring breaks were reported in product models 204 or 209. *See* Att. B.

seek punitive damages, and in seven cases they do not. Misrepresentation, fraud, or deceptive trade practices claims under five different states' statutes (New Jersey, Rhode Island, New York, Ohio, and Alabama) are made in six actions, while the other five cases are proceeding under ordinary tort claims that include negligence, strict liability, and breach of warranty without elements of fraud or misrepresentation.

## ARGUMENT

Under 28 U.S.C. § 1407(a), the transfer of pending federal district court cases for coordinated pretrial proceedings is authorized only where (1) the "actions involv[e] one or more common questions of fact"; (2) transfer will further "the convenience of parties and witnesses;" and (3) transfer "will promote the just and efficient conduct of [the] actions." The movant bears the burden of showing that transfer and consolidation for coordinated pre-trial proceedings is warranted under Section 1407(a). *See In re G.D. Searle & Co. "Copper 7" IUD Prods. Liab. Litig.*, 483 F. Supp. 1343, 1345 (J.P.M.L. 1980) ("movants have not met their burden of demonstrating that transfer will further the purposes of Section 1407"); *In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1354 (J.P.M.L. 1980) (same). Here, movants have not met their burden and their motion should be denied.

### I. Creation Of An MDL Would Not Advance The Efficient And Just Conduct Of The Actions.

More than a year after a voluntary recall of multiple Patch product models, only eleven federal actions involving alleged personal injury from this product are pending. Transfer of such a small number of cases to an MDL is inappropriate under 28 U.S.C. § 1407, as it would not provide convenience for the witnesses or parties nor achieve efficiency in the conduct of the individual actions. Moreover, alternatives to achieving such convenience and efficiency in the pending federal actions are already available and underway, rendering transfer unnecessary.

### A. The Small Number of Pending Actions Does Not Warrant Consolidation.

The Panel has recognized that transfer to MDL for pre-trial coordination is more appropriate when large numbers of cases – rather than a few cases or even dozens of cases – are pending in different federal courts. *Compare In re Asbestos & Asbestos Insulation Material Prods. Liab. Litig.*, 431 F. Supp. 906 (J.P.M.L. 1977) (refusing to transfer 103 cases) to *In re Asbestos Prod. Liab. Litig.*, 771 F. Supp. 415, 417-20 (J.P.M.L. 1991) (noting that the difference between 103 cases in 1977 and more than 30,000 pending actions in 1991 justifies transfer). Thus the Panel has denied transfer when, as here, only a small number of cases are candidates for transfer. *See, e.g., In re DaimlerChrysler Corp. Seat Belt Buckle Prods. Liab. Litig.*, 217 F. Supp. 2d 1376 (J.P.M.L. 2002) ("[g]iven the minimal number of actions involved in this docket," *inter alia*, Section 1407 coordination not warranted) ). Transfer of these cases would serve only to disrupt the ongoing proceedings, some of which have progressed into motions practice and discovery. *See In re Molinaro/Catanzaro*, 464 F. Supp. 966, 969 (J.P.M.L. 1979); *In re Royal Am. Indus., Inc. Secs. Litig.*, 407 F. Supp. 242, 243 (J.P.M.L. 1976). Removing these cases from the district judges who are familiar with their facts and circumstances, and in the best position to direct them expeditiously to trial, and placing them instead with a judge who is new to the litigation, would necessarily delay the ultimate resolution of the overall litigation, without any corresponding benefit. *Royal Am.*, 407 F. Supp. at 243-44 (holding that transfer was unwarranted when "consultation and coordination" among the courts, "coupled with cooperation of the parties," would result in most efficient management of litigation).

There is no indication that a proliferation of litigation over the Patch is in the offing, or that consolidation would result in greater efficiency in the conduct of proceedings. *In re Fotomat Franchisee Litig.*, 394 F. Supp. 798, 799 (J.P.M.L. 1975) (holding that transfer was unwarranted because "relatively few actions are involved in this litigation" and "the filing of

additional actions is unlikely"). Rather, the most likely result of consolidation at this early stage would be to invite the filing of claims that otherwise would not (and most likely should not) be filed, causing even greater disruption in the resolution of the existing cases. The litigation should be allowed to develop and proceed in its normal course, without such artificial augmentation.

**B. Transfer Of The Pending Federal Actions To An MDL Would Not Be Convenient For The Parties Or Witnesses**

Consolidation and transfer of these cases to any location – much less to Rhode Island, as suggested by the movants – would manifestly not serve "the convenience of parties and witnesses." 28 U.S.C. § 1407(a); *see also In re Antibiotic Drugs*, 299 F. Supp. 1403, 1404-05 (J.P.M.L. 1969) (considering whether the "convenience of all parties and all witnesses will be served by the transfer"). The twelve cases proposed for transfer are pending in eleven different federal judicial districts, in eleven states, in different regions of the country. These actions are dispersed across the country in Florida and California, in Louisiana and Ohio, in Rhode Island and Missouri, in New York and Arkansas, and in Illinois and New Jersey and Alabama. Except for the case filed by movants' counsel, every plaintiff filed his or her case within his or her own state of residence or, in one instance, in an adjacent state (for example, plaintiff Von Essen, who lives in Pennsylvania, filed next door in New Jersey).

In addition to the plaintiffs themselves, the key witnesses in each case will be their surgeons and other medical providers, who also reside in or near their home states. *See In re Consolidated Parlodel Litig.*, 22 F. Supp. 2d 320, 324 (D.N.J. 1998) (transferring fourteen product liability cases that had initially been consolidated for discovery in New Jersey, the home of the defendant, to their home jurisdictions because the treating physicians who resided in or

near those jurisdictions were critical witnesses). There is no geographic focus of this litigation and no location that would be convenient for a majority of the participants.

Moreover, to the extent that movants suggest that the cases should be consolidated because *Rhode Island* uniquely serves the convenience of all of the parties – by virtue of the fact that a case has been filed there and it is the home of one of the defendants – the argument is unavailing. One federal case has been filed (by the movants) in Rhode Island, but the movants do not live there.[4] *Cf. National Property Investors VIII v. Shell Oil,* 917 F. Supp. 324, 327 (D.N.J. 1995) (plaintiffs' choice of forum given less deference if plaintiff resides elsewhere and also if "the central facts of a lawsuit" occur outside the chosen forum); *Harris v. National Railroad Passenger Corp.*, 979 F. Supp. 1052, 1053 (E.D.Pa.1997) ("It should be noted, however, that the plaintiff's choice of forum is entitled to less weight where the plaintiff chooses a forum which is neither his home nor the situs of the occurrence upon which the suit is based."). Indeed, *none* of the plaintiffs in the filed cases lives in Rhode Island, or indeed anywhere in New England.

Movants' other principal argument for why Rhode Island is an appropriate location for their proposed MDL is that Davol, one of the defendants, is headquartered there. But Davol's residence in Rhode Island does not make that jurisdiction more convenient for anyone for discovery purposes. Whether there is an MDL or not, the defendants' documents will be sent to plaintiffs' counsel at their respective offices in electronic format and corporate witnesses will be deposed in the respective defendant's home state. Because transfer would not further "the convenience of parties and witnesses," 28 U.S.C. § 1407, it should be denied.

---

[4] To the extent that movants contend that there is a "locus of related activity" in Rhode Island because there are some actions pending there in *state* court, *see* Mem. at 10, that fact is irrelevant to the Panel's analysis. *Cf. In re Zimmer, Inc., Centralign Hip Prosthesis Prods. Liab. Litig.*, 366 F. Supp. 2d 1384, (J.P.M.L. 2005) (panel does not consider cases not before it).

### C. Alternatives To Transfer And Consolidation Under Section 1407 Are Available In The Pending Federal Actions

Centralization of the pending federal actions involving the Patch is not necessary to ensure convenient, just, and efficient litigation because these cases can easily be managed by the district court judges where the cases are pending and by cooperative efforts of the parties. The Panel has recognized that voluntary coordination by the parties may be preferable to consolidating cases. *See, e.g., In re Eli Lilly & Co. "OraFlex" Prods. Liab. Litig.*, 578 F. Supp. 422, 423 (J.P.M.L. 1984) (despite existence of common questions, consolidation was not warranted in part because of defendant's offer to make discovery already conducted available to later litigants); *see also In re Cable Tie Patent Litig.*, 487 F. Supp. at 1354 (same); *In Re G.D. Searle & Co., "Copper 7" IUD Prods. Liab. Litig.*, 483 F. Supp. at 1345 (finding that coordinated discovery was a "suitable alternative [] to transfer"); *In re Chiropractic Antitrust Litig.*, 483 F. Supp. 811, 813 (J.P.M.L. 1980) (same).[5]

The pending federal actions concerning the Patch involve a limited number of plaintiffs, plaintiffs' counsel, federal jurisdictions, and federal district court judges. Discovery and pretrial proceedings can easily be coordinated through cooperation among the parties in each of the individual pending actions. Discovery is actively underway in several of the pending federal actions (*Carter*, *Edgar*, *Wilson*). The parties are in the process of providing written discovery in some cases. Medical records collection and document review is ongoing. Scheduling orders have been entered, or are being negotiated, in some cases. In those cases, defendants Bard and Davol already have coordinated discovery efforts with plaintiffs' counsel, and intend to continue

---

[5] *See also, e.g., In re Orthoalliance, Inc., Contract Litig.*, 350 F. Supp. 2d 1354, 1355 (J.P.M.L. 2004) (alternatives exist to minimize duplicative discovery and conflicting rulings); *In re Chromated Copper Arsenate (CCA) Treated Wood Prods. Liab. Litig.*, 188 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002) (same); *In re Unitrin, Inc. Ins. Sales Practices Litig.*, 152 F. Supp. 2d 1371, 1372 (J.P.M.L. 2002) (alternatives to transfer exist including "cooperative management" of the pending litigation); Manual for Complex Litigation (Fourth) § 22.342 (2004).

to do so by, among other things, (1) producing documents on a rolling basis in all cases in which discovery has opened and a protective order is in place; (2) facilitating cross-noticed 30(b)(6) depositions and corporate depositions which will be applicable to all actions; and (3) making document discovery applicable to multiple actions. For example, Bard and Davol have already agreed with movants' counsel Motley Rice to make their documents available in and applicable to all Patch cases being handled by them. The same benefits that might be attained through Section 1407 transfer can be, and already are being, obtained through voluntary cooperation, without the disruption that multidistrict transfer litigation would cause in ongoing cases.

## II. Transfer To An MDL Under Section 1407 Is Not Warranted Because These Cases Present Too Many Individual Fact Questions.

The Panel regularly denies transfer when, despite the presence of some common questions of fact, unique questions of fact dominate each action. *See In re Pharmacy Ben. Plan Administrators Pricing Lit.*, 206 F. Supp. 2d 1362 (J.P.M.L. 2002) (denying transfer because, although actions "clearly share common legal questions and, perhaps, a few factual questions, unique questions of fact predominate over any common questions of fact"); *In re Boeing Co. Employment Pracs. Litig.*, 293 F. Supp. 2d 1382 (J.P.M.L. 2003) (denying transfer where "unique questions of fact . . . predominate over any common questions of fact"). Furthermore, the party seeking transfer of a small number of pending cases under Section 1407 is "under a heavy burden" to show that the alleged common issues will play a central role in the litigation . *See Eli Lilly,* 578 F. Supp. at 423; *In re 21st Century Prods., Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 272-73 (J.P.M.L. 1978). Movants cannot meet that burden here.

The individual medical facts of each case overwhelmingly predominate over common issues and are likely to dominate discovery and other pre-trial issues. The primary commonality among these cases, according to movants, is the allegation that the recoil ring can break after

implantation, causing serious internal injuries. *See* Mem. at 3; Motion ¶ 4(e) (listing as common issue "whether Composix Kugel Mesh Patches share a common and inherent design defect that causes them to break, creating a risk of injury or death to patients in whom they were implanted"); *see also id.* ¶ 4(a) ("whether there are design and/or manufacturing defects in the Composix Kugel Mesh Patch"). Yet in only four of the cases (*Edgar*, *Mathein*, *Von Essen*, and *Wilson*) do plaintiffs allege that they have experienced any problem with the ring component of the Patch. The cases also involve different models of the Patch, with different design, regulatory, and recall histories, and (to the extent relevant) different reported rates of ring break. *See* Attachment A & n.3.

Moreover, each individual plaintiff who alleges physical injury (or alleges a need for medical monitoring) will have a unique and critical medical history. Since the Patch is used almost exclusively for the repair of incisional hernias – hernias that occur due to the failure of at least one prior abdominal surgery – significant and unique medical issues will be presented in each case regarding the particular plaintiff's surgical history and major comorbid conditions. These issues are likely to dominate discovery and other pre-trial proceedings.

In addition to the very different medical facts inherent to the patient by virtue of their surgical and major medical history, the surgical procedure followed in each case will present different critical facts. The specific surgical procedure used to implant each Patch (including whether laparoscopic or open and the method of insertion, deployment, and attachment), and the unique circumstances surrounding each surgery likely will need to be evaluated and taken into account for each of the plaintiffs who underwent surgery involving a specific model of the Patch. The parties will need to evaluate whether the surgeon or surgical team caused damage to the Patch in the handling, preparation or implantation of the device during the course of surgery, surgical preparation or postoperative treatment. *See, e.g., In re Luminex Int'l Inc. Prods. Liab.*

*Litig.*, 434 F. Supp. 668, 669-670 (J.P.M.L 1977) (even though intraocular lens cases sought to be transferred all involved alleged contamination of a single lot, denying transfer because individual issue of the condition of the particular lens implanted in each of the plaintiffs predominated). The nature of this evidence will vary dramatically from case to case and will, of course, be found in the states where the cases are now pending (or, in one case, in an adjacent state). When individual medical facts are crucial to each claim, the Panel should deny transfer:

> Local issues will predominate in the discovery process. The medical, personnel, and product use records of each individual will be found locally. Liability in these actions will be based on state substantive law. As a result, transfer would not promote the parties' and witnesses' convenience regarding discovery.

*In re Asbestos & Asbestos Insulation Material Prods. Liab. Litig.*, 431 F. Supp. 906, 910 (J.P.M.L. 1977). This is precisely the situation here with respect to the Patch claims pending in the federal district courts. Individual fact questions predominate, transfer would not be convenient for the parties and witnesses, and the just and efficient conduct of the pending cases will not served.

The pending cases also differ substantially in the causes of action pleaded, and thus the evidence required. In particular, the movants, unlike the plaintiffs in all other cases, do not even allege that they have suffered *any* physical injury; rather, they assert that they are entitled to medical monitoring for speculative future complications arising from the implantation of the Patch. This claim for prospective relief – not sought by any other plaintiff – involves a host of factual issues not present in the other cases, in which plaintiffs seek compensation for injuries already suffered. Consolidation of these disparate matters would introduce a multitude of extraneous individual issues into the ongoing cases and would serve only to delay resolution of the litigation. *See In re Asbestos & Asbestos Insulation Material Prods. Liab. Litig.*, 431 F. Supp. 906, 910 (J.P.M.L. 1977) (holding that transfer was unwarranted when unique factual

issues dominate the individual cases and consolidation would delay resolution of litigation). An MDL is unwarranted and movants' request should be denied.

The cases which *do* assert personal injury involve causes of action pleaded under the substantive laws of at least ten different states, depending on choice of law determinations applicable to each individual plaintiff. *See Case Chart,* Att. A. The cases range from the movants' own case, which asserts a claim only under the Rhode Island Deceptive Trade Practices Act for possible future injury and seeks medical monitoring and punitive damages, to *Mathein*, which claims only strict liability and no punitives, to *Carter*, which adds to the usual product liability claims a claim for breach of contract, but does not include any cause of action based on fraud or misrepresentation and does not ask for punitive damages. Similarly, for example, plaintiffs contend that a "common issue" exists as to "whether the surgical patients have been injured by virtue of the Defendant's deceptive business practices and conduct," MDL Motion ¶ 4(h), but only five of the eleven federal lawsuits claiming injury even contains a deceptive trade practices (or equivalent) statutory claim – and movants themselves do not even claim to be "injured" at all. *See Case Chart,* Att. A. The movants contend that a common issue exists as to "whether Defendants negligently, recklessly, or intentionally misrepresented the quality and usefulness of the Composix Kugel Mesh Patch," MDL Motion ¶ 4(f), but not all of the cases implicate such an issue by pleading deceptive trade practices under a state statute or a failure to warn claim.

The great variety in the pleading is further complicated by the variety amongst the nominally similar claims due the differences in applicable state law. Where different substantive laws apply to each plaintiff's claim, the fact cuts sharply against transfer for consolidated discovery. *See, e.g., In re BridgeStone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) (fraud and products liability claims are unsuited for consolidated treatment because of

differences between the states); *In re: Blood & Blood Prods. Hepatitis C Virus Prods. Liab. Litig.*, 2000 U.S. Dist. LEXIS 11149, at *3 ("given the wide array of claims raised, encompassing various blood products, time periods, and transmission modes, . . . individual, not common, questions of fact rise to the forefront"); *In re Repetitive Stress Injury Prods. Liab. Litig.*, No. 955, 1992 WL 403023, at *1 (J.P.M.L. Nov. 27, 1992) (common questions regarding plaintiffs' product liability/personal injury claims against numerous equipment manufacturers did not arise to the "degree" necessary for transfer under § 1407); *In re G.D. Searle & Co. "Copper 7" IUD Prods. Liab. Litig.*, 483 F. Supp. at 1343, 1345 (rejecting §1407 consolidation in medical device litigation where contended that common issues involving research, design, testing, labeling, promotion and compliance with FDA regulatory standards for the medical device justified transfer, because the movants failed to show that transfer would provide convenience for witnesses and parties, and promote just and efficient litigation).[6]

## III. If The Panel Creates An MDL, It Should Not Select The District of Rhode Island.

Movants have not met their burden of showing that transfer and consolidation of eleven pending federal actions with their pending action in federal district court in Rhode Island is warranted under 28 U.S.C. § 1407. However, should the Panel find transfer under Section 1407 to be appropriate, Defendants submit that the district suggested by movants – the District of Rhode Island – is not a suitable choice.

[6] An MDL court confronted with such a wide array of state law may be less likely to resolve dispositive motions early and efficiently. *See In re Phenylpropanolamine Prods. Liab. Litig.*, No. 1407, 2004 WL 2034587, at *2 (W.D. Wash. Sept. 2, 2004) (declining to rule on motion to dismiss that would require review of individual complaints and application of the correct state law to each, noting such decisions are "neither the purpose, nor the forte," of an MDL court); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, No. 1014, 1997 WL 109595, at *2-3 (E.D. Pa. Mar. 7, 1997) (declining to rule on summary judgment motions because to do so "would be an inefficient and daunting endeavor not contemplated by § 1407").

**A. Other Districts Are Better Suited To Receive An MDL.**

There is no center of gravity to the actions at issue here, either geographically or in terms of a concentration of filed cases. Cases have been filed in scattered courts across the country. In this circumstance, the Panel has favored a geographically central location for an MDL. *See, e.g., In re Teflon Prods. Liab. Litig.*, 416 F. Supp. 2d 1364, 1365 (J.P.M.L. 2006) (in view of "the range of locations of parties and putative class members" and "the geographic dispersal of the pending actions," selecting the Southern District of Iowa in part because it "provides a geographically central location"); *In re African-American Slave Descendants Litig.*, 231 F. Supp. 2d 1357, 1358 (J.P.M.L. 2002) (where "no district stands out as the focal point" of the litigation, selecting the Northern District of Illinois because "this geographically central district will be a convenient location for a litigation becoming nationwide in scope").[7]

Additionally, as with all MDL assignments, the Panel considers factors including (i) how far a given case has advanced in pretrial proceedings; (ii) whether the district has the resources to handle an MDL, and (iii) the judge's temperament and experience with multidistrict litigation. *See, e.g., In re E. Lay & Co. Antitrust Litig.*, 391 F. Supp. 1054, 1056 (J.P.M.L. 1975) ("We have often held that a factor to be considered in the selection of a transferee district is whether the pretrial proceedings in the action or actions in a particular forum are significantly more advanced than those in any of the actions in the other jurisdictions."); *In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005) ("we have searched for a transferee judge with the time and experience to steer this complex litigation on a prudent course" and "are assigning this

[7] *Cf. In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 277 F. Supp. 2d 1373, 1374 (J.P.M.L. 2003) (creating an MDL in the District of Connecticut in part because it was "geographically convenient," where the parties and witnesses were in the Eastern United States and in Europe); *In re Air Crash Near Van Cleve, Miss., on Aug. 13, 1997*, 486 F. Supp. 926, 928 (J.P.M.L. 1980) (creating an MDL in Oklahoma rather than in Mississippi, where the crash had occurred, principally because "the Northern District of Oklahoma would be more centrally located and easily accessible transferee forum than the Southern District of Mississippi.").

litigation to a jurist experienced in complex multidistrict products liability litigation and sitting in a district with the capacity to handle this litigation").[8]

Furthermore, experience teaches that the creation of an MDL may itself lead to an increase in the number of suits filed, thereby multiplying the resources necessary to resolve the litigation. Thus, if the Panel decides to create an MDL, it should be transferred to a district that has the resources to handle future caseload and that is geographically central and convenient. Moreover, such an MDL should be assigned to a judge whose own docket would not be overwhelmed, and who possesses the experience and temperament to guide the MDL.

As to all of these criteria, the Eastern District of Missouri, where the *Edgar* v. *Davol, Inc.*, No. 4:06-cv-1471-SNL, case is pending before Senior Judge Limbaugh, appears to be an optimal forum in the event an MDL is created. The *Edgar* case is among the most advanced of the cases; it has been pending for more than five months, discovery is underway, and the defendants have offered documents for production pending entry of an appropriate protective order. The district is geographically central, and is close to the jurisdictions where many cases are pending—indeed, plaintiffs in three of the eleven pending cases live in Missouri or an adjoining state. Moreover, Saint Louis is a major transportation hub, convenient for the participants. The Eastern District of Missouri has the resources and experience to handle a complex MDL. *See Metropol Succinate*, 329 F. Supp. 2d at 1370 ("this accessible, metropolitan district is well equipped with the resources that this complex docket is likely to require").

Judge Limbaugh, moreover, has extensive experience in products liability litigation, as well as with multidistrict litigation. He currently is handling one small MDL, which appears to be winding down, *see In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*, MDL No.

---

[8] *See also In re Metoprolol Succinate Patent Litig.*, 329 F. Supp. 2d 1368, 1370 (J.P.M.L. 2004); *In re Wireless Tel. Federal Cost Recovery Fees Litig.*, 293 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003).

1672, and he previously presided over the Ticketmaster MDL, *see In re Ticketmaster Corp.*, MDL No. 1033. Moreover, Judge Limbaugh is highly regarded for his excellent case management skills.[9]

An alternative venue for an MDL would be the Eastern District of Arkansas, where the *Carter* case has been pending before Chief Judge Holmes since August 2006. *See Carter* v. *Davol, Inc.*, No. 4:06-cv-1012-JLH. Judge Holmes already has considered a motion to dismiss and discovery is underway. Little Rock, like Saint Louis, is geographically central and is close to the jurisdictions of several pending cases. Furthermore, Judge Holmes is highly regarded, and the district has experience with multidistrict litigation.[10]

For these reasons, Defendants respectfully suggest that, if the Panel creates an MDL, the litigation be transferred to Judge Limbaugh in the Eastern District of Missouri or, alternatively, to Judge Holmes in the Eastern District of Arkansas.

**B. The District Of Rhode Island Is Not An Appropriate Forum For An MDL.**

If the Panel decides to create an MDL, there is no compelling reason to assign it to Judge Lisi in the District of Rhode Island, and there are strongly compelling reasons not to do so.

The District of Rhode Island would be an inappropriate MDL venue for at least three reasons.

First, as noted, Rhode Island is not a geographically logical or practical site for this litigation. It is located on the northeastern seaboard, more than a thousand miles from the districts where most of the cases are pending. Moreover, Providence is not a major transportation hub, thereby undermining convenience to the participants.

---

[9] Furthermore, Judge Limbaugh would have enhanced ability to limit his remaining docket and focus energy on an MDL. *See* 28 U.S.C. § 294(b) (senior judge has discretion to accept "such judicial duties as he is willing and able to undertake").

[10] *See In re Prempro Prods. Liab. Litig.*, No. MDL4:03-CV-1507-WRW, pending before Judge Wilson.

Second, the District of Rhode Island appears to lack the resources to handle an MDL. The district has only three active judgeships, one of which became vacant in late 2006. Given that recent vacancy, the two remaining active judges likely will see a significant increase in their caseload in the near term, in addition to Judge Lisi's administrative responsibilities as newly named Chief Judge. Moreover, as movants recognize, the District of Rhode Island has never been assigned an MDL and therefore lacks institutional experience in managing multidistrict proceedings.

Third, the *Montiel* case pending in the District of Rhode Island is not procedurally advanced. To the contrary, it is brand new, filed on February 14, 2007, just days before movants filed their MDL petition. According, Judge Lisi would be starting from scratch, while simultaneously assuming the challenging task of managing an MDL in a short-staffed district.

## CONCLUSION

For the foregoing reasons, the Panel should deny the motion to transfer the pending federal actions to a multidistrict proceeding under 28 U.S.C. § 1407.

March 20, 2007

Respectfully submitted,

SPRIGGS & HOLLINGSWORTH

Joe Hollingsworth /by KTG

Joe G. Hollingsworth
Katharine R. Latimer
Kirby T. Griffis
William J Cople III
1350 I Street, N.W., Ninth Floor
Washington, DC 20005
(202) 898-5800
(202) 682-1639 (facsimile)

*Attorneys for Defendants C.R. Bard, Inc. and Davol Inc.*

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: KUGEL MESH HERNIA PATCH PRODUCT LIABILITY LITIGATION | MDL Docket No. 1842 |

**REASONS WHY ORAL ARGUMENT SHOULD BE HEARD**

C.R. Bard, Inc. and Davol Inc., pursuant to Rule 16.1(b) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, submit the following reasons why the Panel should hear oral argument on plaintiffs' motion to transfer.

Oral argument will assist the Panel in understanding the nature of the pending litigation, and particularly the major differences between the handful of federal cases, which include that some involve claims of personal injury while one (the movant's case) does not, some involve claims that the product in question failed in a manner relevant to a series of recalls, while others make no such claim and do not bring such evidence into issue, that some involve allegations of fraud or misrepresentation and some do not, and that some seek punitive damages and some do not. Oral argument will also assist the Panel by satisfying any concerns that the Panel may have about the manner in which discovery and other pretrial matters already are being successfully coordinated without MDL or other judicial intervention.

RECEIVED
ERK'S OFFICE
MAR 20 P 3:23
PANEL ON
DISTRICT

Date: March 20, 2007

Respectfully Submitted,

Joe Hollingsworth / by KTG

Joe G. Hollingsworth, DC Bar No. 203273
Kirby T. Griffis, DC Bar No. 453091
William J. Cople III, DC Bar No. 384984
SPRIGGS & HOLLINGSWORTH
1350 I Street N.W.
Washington, DC 20005
(202) 898-5800
(202) 682-1639 (fax)

Attorneys for Defendants
C.R. BARD, INC. and DAVOL INC.

**PROOF OF SERVICE**

I HEREBY CERTIFY that on this 20th day of March 2007, I served copies of C.R. Bard, Inc.'s and Davol Inc.'s Response of C.R. Bard, Inc. and Davol Inc. to Plaintiffs' Motion for Transfer, Coordination, and Consolidation of Related Actions to the District of Rhode Island and Memorandum of Law in Support of Response, Reasons Why Oral Should be Heard, and Schedule of Actions via first-class mail; ECF and/or hand-delivery on the following persons:

Harris L. Pogust
Pogust & Braslow, LLP
161 Washington Street, Suite 1520
Conshocken, PA 19428
Counsel for Plaintiff Jenine Von Essen

Maruice B. Graham
M. Graham Dobbs
Gray & Ritter, P.C.
701 Market Street, Suite 800
St. Louis, MO 63101-1826
Counsel for Plaintiff Timothy J. Edgar

Craig Philip Niedenthal
Cory Watson Crowder
2131 Magnolia Avenue, Suite 200
Birmingham, AL 35205
Counsel for Plaintiff Jane R. Wilson

Jonathan Alan Saul
Thomas Minder and Associates
2151 River Plaza Drive, Suite 290
Sacramento, CA 95833
Counsel for Plaintiffs Daniel Poston and Darline Poston

RECEIVED
CLERK'S OFFICE
2007 MAR 20 P 3:23
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

Joseph W. Phebus
Phebus & Koester
136 W. Main Street
Urbana, IL 61801
Counsel for Plaintiff James Daniel Mathein

Edward A. Wallace
Wesler Toriseva Wallace LLP
One N. LaSalle Street, Suite 2000
Chicago, IL 60602
Counsel for Plaintiff Sonia Montiel, *et al.*

David A. Hodges
Attorney at Law
Centre Place
212 Center Street, Fifth Floor
Little Rock, AR 72201-2429
Counsel for Plaintiff Carolene Jean Carter
Counsel for Plaintiff Mary Jane Campbell

William Douglas Martin
Kutak Rock LLP
214 W. Dickson
Fayetteville, AR 72701
Counsel for WCO Medical Products Corp. and Surgical Sense, Inc.

Donald D. Zuccarello
3209 West End Avenue
Nashville, Tennessee 37203
Counsel for Plaintiff George Luffman

Andrew J. Carboy
Sullivan Papain Block McGrath & Cannavo, P.C.
120 Broadway, 18th Floor
New York, New York 10271
Counsel for Plaintiffs Sophia Katechis and Nicholas Katechis
Counsel for Plaintiffs Thomas Hyland and Mary Jean Hyland

W. Lewis Garrison, Jr.
Heninger Garrison Davis, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
Counsel for Plaintiffs Lilyan Kathleen Hall and Alonzo Hall

Peter J. Brodhead
Spangenberg, Shibley & Liber
1900 East Ninth Street, Suite 2400
Cleveland, Ohio 44114
Counsel for Richard Sayler and Lucinda Sayler

Joe Hollingsworth / by KTG

Joe G. Hollingsworth

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

IN RE: KUGEL MESH HERNIA PATCH PRODUCT LIABILITY LITIGATION ) MDL Docket No. 1842

**SCHEDULE OF ACTIONS**

| Case Captions | Court | Civil Action No. | Assigned Judge |
|---|---|---|---|
| Carolene Jean Carter v. C.R. Bard, Inc., Davol Inc. and John Does I-V | E.D. Ark (Little Rock Division) | 4:06-cv-01012 | J. Leon Holmes |
| Jenine Von Essen v. C.R. Bard, Inc. and Davol Inc. | D.N.J. (Newark Division) | 2:06-cv-04786 | Susan D. Wigenton |
| Timothy J. Edgar v. Davol Inc. | E.D. Missouri (St. Louis Division) | 4:06-cv-01471 | Stephen N. Limbaugh |
| Jane R. Wilson v. Davol Inc. and C.R. Bard, Inc. | N.D. Florida (Pensacola Division) | 3:06-cv-00541 | M. Casey Rodgers |
| Daniel and Darline Poston v. Davol Inc. | E.D. California (Sacramento Division) | 2:07-cv-00032 | Frank C. Damrell, Jr. |
| James Daniel Mathein v. Davol Inc. and C.R. Bard, Inc. | C.D. Illinois (Urbana Division) | 2:07-cv-02031 | Michael P. McCluskey |

| | | | |
|---|---|---|---|
| Sonia Montiel, on behalf of herself and all others similarly situated and Carol Nunes-McNamara, on behalf of herself and all others similarly situated v. C.R. Bard, Inc. and Davol Inc. | D.R.I. (Providence Division) | 1:07-cv-00064 | Mary M. Lisi |
| George Luffman v. C.R. Bard, Inc. and Davol Inc. | M.D. Tenn. (Nashville Division) | 3:07-cv-0243 | William H. Haynes |
| Thomas D. Hyland and Mary Jean Hyland v. C.R. Bard, Inc. and Davol Inc. | E.D.N.Y. (Brooklyn Division) | 2:07-cv-01054 | Joanna Seybert |
| Sonia Katechis and Nicholas Katechis v. C.R. Bard, Inc. and Davol Inc. | S.D.N.Y. (Manhattan Division) | 1:07-cv-02098 | Barbara S. Jones |
| Richard Sayler and Lucinda Sayler v. Davol Inc. and C.R. Bard, Inc. | N.D. Ohio (Eastern Division) | 1:07-cv-00765 | Lesley Wells |
| Lilyan Kathleen Hall and Alonzo Hall v. Davol Inc. and C.R. Bard, Inc. | N.D. Ala. (Northwestern Division) | 3:07-cv-00480 | Magistrate T. Michael Putnam |

DAVOL

**IMPORTANT PATIENT MANAGEMENT INFORMATION: Bard® Composix® Kugel Extra Large and Large Sized Patch Class I Recall**

**Product Code: 0010202, Bard® Composix® Kugel Large Oval, 5.4" x 7.0"**
**Product Code: 0010204, Bard® Composix® Kugel Large Circle, 4.5"**
**Product Code: 0010206, Bard® Composix® Kugel Extra Large Oval 8.7" x 10.7"**
**Product Code: 0010207, Bard® Composix® Kugel Extra Large Oval 10.8" x 13.7"**
**Product Code: 0010208, Bard® Composix® Kugel Extra Large Oval 7.7" x 9.7"**
**Product Code: 0010209, Bard® Composix® Kugel Oval, 6.3" x 12.3"**

March 24, 2006

Dear Chief of Surgery:

This letter is intended to inform you of the voluntary recall of Bard® Composix® Kugel Extra Large and Large Sized Patches. **Immediately discontinue use of the specific product codes and lot numbers listed below. Additionally, please immediately distribute copies of this Important Patient Management Information to clinicians who may have implanted, or who may be managing, patients already implanted with one of these products under voluntary recall.** This information supplements information contained in the recall letters issued by Davol, a subsidiary of C. R. Bard, Inc. in December 2005 and January 2006 for the Extra Large Patches and March 2006 for the Large Patches.

Additionally, updated product Instructions For Use ("IFU") are included with this letter for those products not subject to this recall. These updated IFUs document the appropriate folding technique to be used for both Open Placement and Laparoscopic Placement for the Large Kugel Patches. Additional copies of these IFUs are available from Davol Customer Service by calling 1-800-531-4124.

**SUMMARY OF THE PRODUCT RECALL COMMUNICATIONS:**
Recall of our Extra Large and Large sized Bard® Composix® Kugel Patches is being conducted because we have identified the potential for PET recoil ring breakage which could potentially lead to patient complications such as abdominal pain, bowel perforation or chronic enteric fistulas. The following products and lot numbers are being recalled:

| Product Code | Description | Lot Numbers Recalled |
|---|---|---|
| 0010202† | Bard® Composix® Kugel Large Oval 5.4" x 7" | 41*L****, 41*M****, 41*N**** 43*L****, 43*M****, 43*N**** |
| 0010204† | Bard® Composix® Kugel Large Circle 4.5" | 41*L****, 41*M****, 41*N**** 43*L****, 43*M****, 43*N**** |
| 0010206 | Bard® Composix® Kugel Extra Large Oval 8.7" x 10.7" | All Lot Numbers |
| 0010207 | Bard® Composix® Kugel Extra Large Oval 10.8" x 13.7" | All Lot Numbers |

RECEIVED CLERK'S OFFICE
2007 MAR 20 P 3:23
JUDICIAL PANEL ON

Attachment B

| | | |
|---|---|---|
| 0010208 | Bard® Composix® Kugel Extra Large Oval 7.7" x 9.7" | All Lot Numbers |
| 0010209 | Bard® Composix® Kugel Oval 6.3" x 12.3" | All Lot Numbers |

[1]Note: All 0010202 and 0010204 - product lots, with an "L", "M", or "N" in the fourth position are being recalled. The asterisk indicates a placeholder and any and all characters in these positions are subject to the recall.

RECOMMENDATIONS:

We realize that each of your patients is unique and we support your clinical judgment in caring for them. Based on our review of reports received to date and the low incidence of patient injury observed to date, Davol believes that the great majority of patients who received either an Extra Large or Large Sized Bard® Composix® Kugel device subject to recall will be asymptomatic with the device functioning as intended. In such cases the risk of leaving the device in place may be less than the risk posed by removing it.

To further assist physicians in their patient care, Davol offers the following recommendations applicable to patients who have been implanted with one of the recalled devices:

- Identify: patients who have been implanted with one of the recalled devices;
- Communicate: advise patients of this recall and direct them to seek attention immediately if they experience symptoms that could be associated with ring breakage such as unexplained or persistent abdominal pain, fever, tenderness at the implant site or other unusual symptoms;
- Examine: symptomatic patients for conditions that could be associated with recoil ring breakage, including bowel obstruction, perforation or fistula, abdominal wall pain or infection, palpable abdominal wall mass, migration or movement of the ring to the abdominal wall, perineum or intra-abdominal organs;
- Evaluate: your patient's condition based on clinical signs and symptoms and using your clinical judgment. Please note that in some cases clinicians have reportedly intervened surgically to remove a broken ring without removing the adherent patch with good success. However, in more serious cases such as bowel obstruction or perforation or serious abdominal wall infection, you may wish to consider removing the entire patch; and
- Report: please report any problems that you encounter with this or any other Davol product to our Customer Quality Assurance Department at 1-800-556-6756 extension 2438.

OBSERVED RATE OF OCCURRENCE AND CLINICAL IMPLICATIONS:

Product Codes 0010206, 0010207 & 0010208 Bard® Composix® Kugel Extra Large Oval Patches: Through March 10, 2006, a total of 31 ring breaks were reported to us from the approximately 29,000 extra large size units distributed (approximately 0.109%). Of the 31 ring breaks reported, 20 involved patient injury, including,

- 11 cases where the broken ring migrated into or through the patient's abdominal wall, with associated infection in 2 cases;
- 1 case where the ring reportedly migrated into the vagina;
- 7 cases of bowel perforation reported in association with a broken ring;
- 1 case of bowel obstruction, which was repaired without removal of the mesh (causality to the broken ring has not been clearly established in this case);

- 1 reported death where the patient reportedly developed septic shock, consumptive coagulopathy and acute myocardial infarction after surgery to repair small and large bowel fistulas reportedly caused by perforation by the broken ring.

Product Code 0010202, Bard® Composix® Kugel Large Oval Patch: A total of 3 ring breaks have been reported to us from the approximately 24,000 units distributed between 2001 and 2003, for a reported occurrence rate of 0.0125%. Of those three reports, 1 involved patient injury (abdominal wall pain requiring explant of the recoil ring but not the patch) for a reported occurrence rate of 0.0041%.

Product Code 0010209, Bard® Composix® Kugel Oval Patch & Product Code 0010204, Bard® Composix® Kugel Large Circle: No reports of ring breakage have been reported in approximately 22,000 Large Circle patches or approximately 3,000 of the Oval patches. However, because of the similarity to the other products under recall, this product is being recalled as a precaution.

If you experience a ring break please return the product to Davol for a complete evaluation. To return the product call Davol Customer Service at 1-800-531-4124 to receive instructions on how to return the product.

Davol recognizes the impact of any product performance communication on both you and your patients and we sincerely regret the difficulties this recall may cause you and your patients. If you have any questions regarding this patient management communication, please contact Bard's Medical Services and Support Department at 1-800-562-0027. If you are a clinician who would like to speak with the Bard Medical Director please contact me at 1-908-277-8306.

Any adverse reactions or quality problems experienced with use of these products should be reported to the FDA MedWatch Program by phone at 1-800-FDA-1088, by fax at 1-800-FDA-0178, by mail to MedWatch, HF-2, FDA, 5600 Fishers Lane, Rockville, Md. 20852-9787, or on the MedWatch web site at www.fda.gov/medwatch.

Sincerely,

David Ciavarella, M.D.
Staff Vice President, Corporate Clinical Affairs

**Characteristics of Federal Lawsuits Allegedly Involving Composix® Kugel® Patch**

| Federal Action | Patch Model | State Law Causes of Action | Punitives Claim | Ring Break |
|---|---|---|---|---|
| Carter | "Comp. Bard K. Mesh 20.3 x 25.4" = 208 | Negligence, strict liability, implied warranty of merchantability, implied warranty of fitness for a particular purpose, express warranty, *res ipsa loquitur*, breach of contract | No | None claimed |
| Edgar | 207, 208 | Strict liability, product liability – failure to warn, product liability – negligence, implied warranty, express warranty | No | claims patches "failed" |
| Von Essen | Unknown | Negligence, negligence *per se*, intentional infliction of emotional distress, negligent infliction of emotional distress, New Jersey Consumer Fraud Act, New Jersey Product Liability Act | Yes | Ring break claimed |
| J. Wilson | Unknown | Negligence, strict liability, negligent failure to warn | No | "Patch broke or failed" |
| Poston | Unknown | Negligence, strict liability, consortium | No | Ring break not alleged |
| Mathein | Unknown | Strict liability | No | Loose line alleged |
| Luffman | Unknown | Strict liability, negligence, failure to warn, implied warranty | No | Ring break not alleged |
| Hyland | 202 | Deceptive trade practices (N.Y. Gen. Bus. Law), negligence, strict liability implied warranty, express warranty, false advertising, loss of consortium | Yes | Ring break not alleged |
| Katechis | Unknown | Deceptive trade practices (N.Y. Gen. Bus. Law), negligence, strict liability implied warranty, express warranty, false advertising, loss of consortium | Yes | Ring break not alleged |
| Montiel (2 plaintiffs) | Unknown | Rhode Island Deceptive Trade Practices Act | Yes | No ring break |
| Sayler | 202 | Strict liability, implied warranty, deceptive trade practices, loss of consortium | No | Ring break not alleged |
| Hall | 208 | Negligence, strict liability, failure to warn, implied warranty, fraud, consortium | Yes | Ring break not alleged |

RECEIVED CLERK'S OFFICE 2007 MAR 23 JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

Attachment A