**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| SONIA MONTIEL and CAROL NUNES-MCNAMARA, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DAVOL, INC., and C.R. BARD, INC.<br><br>Defendants. | CASE NO. CA 07 064 ML<br><br>CLASS ACTION<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs, Sonia Montiel and Carol Nunes-McNamara, by their attorneys, move this Honorable Court for the entry of an order denying Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, and for their memorandum in opposition to Defendants' Motion, state as follows:

## I.

## INTRODUCTION

The focus of this litigation is on the Composix Kugel Mesh Patch manufactured by Davol, Inc. ("Davol") and C.R. Bard, Inc. ("Bard"). The Composix Kugel Mesh Patch ("Kugel Mesh") is a polypropylene mesh prosthetic device developed to repair ventral hernias, or hernias of the abdominal region. Am. Compl. ¶ 11. A hernia occurs when the stomach muscles are too weak to contain the intestines and as a result a rupture occurs in the muscle wall which allows the intestines to protrude. *Id.* ¶ 9. Often, a mesh patch is inserted through a small incision and is placed between the intestines and the stomach muscles to provide support and keep the intestines in the abdominal cavity. *Id.* ¶ 11. If the Kugel Mesh patch is used, in order to fit through the small incision, the mesh

is folded one or more times. *Id.* Once inside the abdomen, the Kugel Mesh re-deploys as a result of its hard "memory recoil ring," which surrounds the mesh and is the primary component of the patch. *Id.*

As plaintiffs allege, the Kugel Mesh patch is defective. As a result of this dangerous condition, and the numerous serious injuries that have occurred (including death), the Food and Drug Administration ("FDA") issued Class 1 recalls of the X-Large Oval, Large Oval and Large Circle varieties of the Composix Kugel Mesh Patch starting in December 2005. The recall was extended in March of 2006, and then again in January of 2007, to incorporate more of the manufacturer's patches, which now includes approximately 100,000 devices. A Class 1 recall is the highest level of recall available to the FDA, and is issued when the FDA believes a medical product is dangerous or defective and predictably could cause serious health problems or death.

Plaintiffs are individuals who have had this defective device surgically implanted in their bodies. They claim that as a direct and proximate result of Defendants' defective design, manufacture, function and/or inadequate warnings regarding the Kugel Mesh, they have sustained, and will continue to sustain, injuries and damages. *Id.* ¶ 28-29 As explained further below, the Plaintiffs' claims deserve to be heard.

## II.

## PROCEDURAL HISTORY

Plaintiffs originally filed their Class Action Complaint ("Original Complaint") alleging a violation of the Rhode Island Deceptive Trade Practices Act – which Defendants subsequently moved to dismiss. Instead of responding to that motion, Plaintiffs chose to file a First Amended Class Action Complaint ("Amended Complaint"), alleging breach of implied warranty of merchantability, negligence and unjust enrichment claims. Even though the Amended Complaint

alleges that Plaintiffs unknowingly had Defendants' dangerous and defective product – which the FDA has determined to be unfit to be sold for human use – surgically implanted inside their bodies, Defendants' motion to dismiss is substantially based on their argument that Plaintiffs have suffered no injury or damages, and have received the "benefit of their bargain with Defendants." Deft's Memo at 9. Essentially, Defendants' motion is divided into two sections: the first, asserting that the Plaintiffs do not have "compensable physical injuries" based upon the "admission" made by the class definition they proposed in the Original Complaint; and the second, asserting that "there is no product liability" because the Plaintiffs cannot show that they were injured by the defective product. The Defendant has divided the second section into two subparts, arguing that (1) the Plaintiffs' negligence and implied warranty claims fail, as a matter of law, under the law of the States of California, Illinois, and Rhode Island; and that (2) the Plaintiffs' unjust enrichment claims also fail, as a matter of law, under the law of those three jurisdictions. As discussed below, these assertions are contrary to fact and law.

In response, this memorandum in opposition to Defendants' motion: (1) sets out the applicable standard of law for a Rule 12(b)(6) motion to dismiss; (2) explains why the determination of these issues is premature, before the record is sufficient to conduct a proper choice of law analysis; (3) discusses why the class definition contained in the Original Complaint cannot be construed as an "admission" that injury has not occurred; (4) demonstrates that all three causes of action were adequately plead under Rhode Island State law; and (5) fully discusses the past, present and future injuries and damages sustained by the Plaintiffs. Accordingly, Plaintiffs respectfully submit that the Defendants' motion to dismiss should be denied in its entirety.

## III.

## STANDARD OF LAW ON RULE 12(B)(6) MOTION TO DISMISS

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), "a court must take the allegations in the plaintiff's pleadings as true and must make all reasonable inferences in favor of the plaintiff." *Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005)(citing *Pena-Borrero v. Estremeda*, 365 F.3d 7, 11 (1st Cir. 2004)). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. at 33 (internal quotations and citations omitted). Defendants' Motion ignores the applicable standard and asks the Court to accept or assume purported facts inconsistent with the Complaint's allegations. *See Yangtze Optical Fibre v. Ganda, LLC*, 2006 U.S. Dist. LEXIS 38510, at *2-3 (D.R.I. 2006).

## IV.

## ABSENCE OF A CHOICE OF LAW ANALYSIS

In their Motion to Dismiss, Defendants argue that Plaintiff has failed to state a claim for the common law claims of breach of implied warranty of merchantability, negligence, and unjust enrichment. In doing so, Defendants' assertions erroneously cite to the law of three jurisdictions – Illinois, California and Rhode Island – without first providing a choice-of-law analysis. Defendants try to accelerate the choice of law determination by baiting Plaintiffs and the Court into a determination of what law applies to this motion. This Court need not conduct a choice of law analysis at this point, since Plaintiffs have satisfied the pleading requirements of the Federal Rules of Civil Procedure with respect to all of their claims, as set forth in detail below. It is inescapable that Plaintiffs' claims will be governed by State law, *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938),

but Defendants prematurely (and without any analysis whatsoever) ask the court to presume that the substantive law of these jurisdictions will be applied.[1]

This Court should reject Defendants' invitation to use choice of law to dismiss Plaintiffs' case at this stage of the case. *See Alfons* v *E.I. Dupont de Nemours & Co.*, 261 F .2d 434, 436 (2d Cir. 1958) (holding that "[i]t would be premature, also, before the facts are developed, for us to express an opinion as to what the law of Ohio may be in respect to implied warranties, nor are we called upon to do so"); *Dyotherm Corp.* v. *Turbo Machine Co.*, 233 F. Supp. 119, 122-123 (E.D. Pa. 1964) (internal citations omitted) (since neither counsel filed an "exhaustive" analysis of relevant law, the Court was "persuaded that in the present posture of this case the third count should not be dismissed for insufficiency, since it does not appear 'to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claim'"); *see also Silzone Heart Valve Prods. Liab. Litig. v. St. Jude Med., Inc. (In re St. Jude Med., Inc.)*, 425 F.3d 1116, 1120 (8th Cir. 2005).

The choice of law analysis in a class action is properly undertaken in the context of the class certification predominance analysis under Fed. R. Civ. P. 23(b)(3).[2] This case is far from the class certification stage. It makes intuitive sense to defer analysis and decision on the choice

---

[1] As an example of the flaws in Defendants' presumptions, Plaintiffs point out that Bard is headquartered in New Jersey, and, therefore, arguments could be made that New Jersey law should apply to these claims, yet Defendants' brief makes no reference to the law of that State.

[2] *See, e.g., Spence v. Glock, Inc.*, 227 F.3d 308, 311 (5th Cir. 2000) (a threshold question in reviewing a class certification decision is "whether the district court conducted a proper choice of law analysis"); *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) (noting "a district court must consider how variations in state law affect predominance and superiority" when contemplating certifying a class and citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C. Cir. 1986)); *see also In re St. Jude Med., Inc.*, 425 F.3d at 1119-20 (district court failed to conduct a sufficient conflicts-of-law analysis for class certification decision); *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 561 (ED. Ark. 2005) ("choice-of-law issue [must] be addressed at the class certification stage"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 82 (D. Mass. 2005) ("[t]o analyze the predominance challenge, this court must first determine what law applies."); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 276-78 (D. Mass. 2004) (deciding choice of law in context of predominance analysis); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 207-08 (D. Minn. 2003) (same) (citing *Castano*, 84 F.3d at 174); *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 140-44 (E.D. La. 2002) (same); *In re Warfarin*, 212 F.R.D. at 251 -52 (same, in response to objection to settlement class.

of law issue to the class certification juncture. Indeed, choice of law arguments will be addressed when class certification motions are made or when the case is set for trial; or at a minimum after there is a record upon which the applicability of laws can be determined. Defendants' truncated choice-of-law analysis for purposes of dismissing claims is inappropriate.

Plaintiffs have brought their claims in Rhode Island and the claims arise here because Davol is located in the jurisdiction; for a time, the defective product was manufactured here. Am. Compl. ¶ 4. As such, the allegations of the Amended Complaint justify the application of Rhode Island law. Therefore, should the Court determine that this issue is not premature, the law of Rhode Island should govern this motion to dismiss.

## V.

## ARGUMENT

### A. There Are No "Admissions" Of Fact In The Original Pleading Which Permit Dismissal Of Plaintiffs' Claims

Defendants' initial argument, relating to whether an "injury" was alleged, simply attempts to mischaracterize the class definition proposed in the Original Complaint as an admission of fact. First, Defendants cite no authority to support their argument that a proposed class definition is an allegation of fact. The manner in which a class is defined is subject to change throughout the litigation. *Marcoux v. Maine*, 797 F.2d 1100, 1103 (1st Cir. 1986)(citing Fed. R. Civ. P. 23(c)(1)). It is customary for both the plaintiff and the court to adjust the boundaries of the class – based upon the claims alleged and the facts uncovered throughout discovery. *See Id.*

Secondly, the class definition that was proposed in the original complaint reads as follows:

> All citizens, residents or domiciliaries of the United States who have had a recalled Composix Kugel Mesh Patch implanted into their person, which has not been explanted, and who have not developed a manifest and diagnosed injury as a result of the product of a degree or severity that would permit individual personal injury

> lawsuits to be commenced in their state of residence, but will require medical monitoring.

Original Complaint, ¶ 29. This is not an admission that Plaintiffs did not suffer injury or damages on account of Defendants' defective product. As explained below, Plaintiffs repeatedly allege injury throughout the Amended Complaint and the Original Complaint. Am. Compl. ¶¶ 24, 28, 29, 43, 45, 51; Original Complaint, ¶¶ 22, 27, 28, 40, 44, 45. The effect of the language in the original class definition that was proposed is not to admit the absence of injury, but to make a necessary distinction between the claims of the individuals who have been required to have the patch surgically removed, from the claims resulting from the injuries incurred by the named Plaintiffs and the Class. The proposed class definition merely differentiates between the two --- those that had the device removed and those that did not. This differentiation makes no statement or admission as to the injuries incurred by each group.

Even if the court is to accept Defendants assertion that a proposed class definition is an allegation of fact, the First Circuit, and courts everywhere, have repeatedly held that "a pleading should not be construed as a judicial admission against an alternative or hypothetical pleading in the same case." *Schott Motorcycle Supply, Inc. v. American Honda Motor Co*., 976 F.2d 58, 61 (1st Cir. 1992), *McCalden v. California Library Association*, 955 F.2d 1214, 1219 (9th Cir. 1990); *Garman v. Griffin*, 666 F.2d 1156, 1159 (8th Cir. 1981).[3] Therefore, Plaintiff is able to allege alternative and even contradictory theories at this stage of the litigation. Finally, to accept the Defendants' mischaracterization of the proposed class definition as a judicial admission is contrary to the admonition in Rule 8(f) that pleadings must be construed to do substantial justice. Fed. R. Civ. P. 8(f).

---

[3] Defendants' reliance on *Schott Motorcycle Supply, Inc*., is ill-founded. In that case, the court's holding was based upon the fact that the plaintiff "clearly and unambiguously alleged in its original complaint and amended complaints that it was a party to [an agreement]." *Schott*., 976 F.2d at 61. Here, there is nothing clear or unambiguous about Defendants' attempt to distort Plaintiffs' claims of injury.

Defendants' argument also relies on matters outside the amended complaint – as stated above, a motion to dismiss based upon Rule 12(b) requires that the grounds for dismissal must be clear on the face of the pleadings alone. *Puerto Rican-American Ins. Co. v. Benjamin Shipping Co.*, 829 F.2d 281, 285 (1st Cir. 1987). It therefore follows that, if the court considers matters "outside" the pleadings, this converts the motion to one for summary judgment under Rule 56. *Id.* Rule 56 defines matters outside the pleadings as "depositions, answers to interrogatories, and *admissions* on file, together with the affidavits, if any. . . . *Aldahonda-Rivera v. Parke Davis & Co.*, 882 F.2d 590, 592 (1st Cir. 1989). Therefore, even if the Court views the class definition proposed in the Original Complaint as an allegation of fact – and, therefore, an "admission" – Defendants have at most raised a material issue of fact which cannot be decided on a Rule 12(b) motion to dismiss.[4]

**B. Viable Negligence, Breach of Implied Warranty of Merchantability and Unjust Enrichment Claims Have Been Plead**

In Section IIA of their memorandum, Defendants chose to group together their arguments relating to Plaintiffs' first two counts, negligence and breach of implied warranty of merchantability; despite the fact that these claims contain different elements, can arise from separate and very different actions and injuries, may provide different types of recovery, and have developed from wholly different areas of law – tort and contract. Deft's Memo at 4-8. As a result, in that Section, it is not entirely clear when Defendants arguments, relating to whether or not Plaintiffs have incurred an actionable injury, are directed at Plaintiffs' negligence claim, and when they are directed at Plaintiffs' implied warranty claim. In this opposition brief, Plaintiffs will first demonstrate that each cause of action has been adequately alleged, and will then address Defendants' "compensable injury" arguments.

[4] Plaintiffs are aware that causation and injury will be contended issues in the future; however, they can only be adequately considered after considerable discovery has taken place. As discussed further herein, these issues are not properly dealt with at this stage of the litigation.

### 1. Plaintiffs Implied Warranty Claim Is Actionable

Count I of the Amended Complaint seeks to recover the economic losses suffered by Plaintiffs as a result of Defendants' breach of the implied warranty of merchantability. ¶¶ 36-43. Under Article 2 of the Uniform Commercial Code which is in effect in virtually every jurisdiction, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." U.C.C. § 2-314(1).

> Under U.C.C. § 2-314(2): Goods to be merchantable must be at least such as:
>
> (1) pass without objection in the trade under the contract description;
>
> (2) in the case of fungible goods, are of fair average quality within the description;
>
> (3) are fit for the ordinary purposes for which goods of that description are used;
>
> (4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;
>
> (5) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (6) confront to the promises or affirmations of fact made on the container or label if any.

*Id.*

Under Rhode Island law, in order to recover for an action for breach of implied warranty of merchantability a plaintiff must establish five elements: "(1) that a merchant sold goods, (2) which were not "merchantable" at the time of sale, and (3) injury and damages to the plaintiff or his property (4) cause proximately and in fact by the defective nature of the goods, and (5) notice to seller of injury." *Castrignano v. E.R. Squibb & Sons*, 546 A.2d 775, 783 (R.I. 1988). If these claims are proven, Plaintiffs can recover damages under theories of contract and personal injury law. *Id.*

In their Amended Complaint, Plaintiffs allege: that Defendants designed, manufactured, distributed, and/or sold the Composix Kugel Mesh Patches which were implanted in Plaintiffs; that they were unsafe for their intended use, and not of merchantable quality; and that Plaintiffs suffered injuries and damages as a result of Defendants' breach of their implied warranty. Am. Compl. at 40-41. As such, all of the elements for a viable breach of implied warranty of merchantability claim are alleged.[5] Defendants' only attack is directed at the allegation of "injury," and Plaintiffs' response to those assertions is contained in Section V(C) below. Essentially, this case presents the archetype of an implied warranty claim.

**2. Negligence Is Properly Alleged**

Under Rhode Island law, in an action for negligence, a plaintiff must establish that the defendant "breached a duty of care owed to the plaintiff and this breach proximately caused an injury to the plaintiff resulting in actual damages." *Caseau v. Belisle*, 2005 R.I. Super. LEXIS 144 (R.I. Super. Ct. 2005)(quoting *Lutz Engineering Co. v. Industrial Louvers, Inc.*, 585 A.2d 631, 635 (R.I. 1991)).

In their Amended Complaint, Plaintiffs allege that Defendants: had a duty to Plaintiffs and the members of the Class to use reasonable care, provide a safe product in design and manufacture, and to warn Plaintiffs and Class members of the defective nature of Defendants' devices; and breached their duties to Plaintiffs and Class members by incorporating a defect into the design of the devices; thereby causing injuries to Plaintiff and Class members. Am. Compl. ¶¶ 44-51. As such, the required elements have been alleged and the Plaintiffs' Amended Complaint sufficiently pleads a claim for negligence. As with the Plaintiffs' implied warranty

[5] Defendants' recall of the devices at issue in this case, in itself, could be seen as an indication that such goods were not merchantable.

claim, Defendants merely assert that the Plaintiffs have not suffered a compensable injury – which is addressed below.

### 3. The Amended Complaint Asserts A Viable Unjust Enrichment Claim

Defendants contend that the unjust enrichment claims of Plaintiffs fail because (1) California and Illinois do not recognize unjust enrichment as a stand alone action; (2) Plaintiffs purportedly fail to allege a cognizable injury because they received the "benefit of the bargain"; and (3) Defendants do not have a duty to "inspect, repair or replace the product after it was installed." Deft's Memo 8-9. These arguments misconstrue the law and ignore relevant precedent.

#### *a. Plaintiffs Have Adequately Pleaded Their Unjust Enrichment Claim*

To establish a claim for unjust enrichment under Rhode Island law, a plaintiff must allege three elements: "'(1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof.'" *APG, Inc. v. MCI Telcoms. Corp.*, 436 F.3d 294, 305 (1st Cir. 2006)(*quoting Bouchard v. Price*, 694 A.2d 670, 673 (R.I. 1997)).

Here, Plaintiffs' unjust enrichment claim is premised on the ill-gotten economic benefits that Defendants received from selling the defective devices. Am. Compl. ¶¶ 52-57. Each device was determined to pose a significant risk to human health. *Id.* ¶¶ 15-17. Plaintiffs are alleged to have been surgically implanted with devices that contained potentially life-threatening defects, and that they paid for such devices, which monies were obtained unjustly by Defendants. *Id.* ¶¶ 52-57. Plaintiffs also allege that Defendants had knowledge of this benefit, and voluntarily accepted and retained the benefit to the detriment of the Plaintiffs. *Id.* Thus, Plaintiffs have more than adequately

pleaded the elements of an unjust enrichment claim.[6]

*b. Defendants' Unjust Enrichment Arguments Fail*

Despite the fact that not every jurisdiction recognizes unjust enrichment as a "stand alone action," the elements required for recovery under a theory of an unjust enrichment are virtually identical throughout the United States in every respect here material. *See, e.g., Blue Cross/Blue Shield of Ala. v. Wyeth Pharm., Inc.*, No. Civ. A. 2003-6046-RSV, 2006 WL 1241019, at *5 (Ala. Cir. Ct. Feb. 27, 2006) ("unjust enrichment is recognized in a virtually identical fashion in every jurisdiction in the United States").[7] A plaintiff must allege that: (1) he or she conferred a benefit upon the defendant, who had knowledge of the benefit; (2) the defendant accepted and retained the conferred benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit. *Restatement (First) of Restitution* § 1 (1937). As demonstrated in sub-section "a" above, this universally accepted standard has been echoed by courts interpreting Rhode Island law – which explicitly allows for a stand alone claim for unjust enrichment. *APG, Inc.*, 436 F.3d at 305.

Additionally, Defendants do not cite to any jurisdiction that requires Plaintiffs to allege they

[6] In the legally analogous and overlapping context of restitution, the *Restatement (Third) of Restitution and Unjust Enrichment* § 1 cmt. b (Discussion Draft 2000) provides that the law of restitution is the law of unjust enrichment and courts have repeatedly affirmed consumers' claims when a manufacturer sells medical devices or drugs in violation of the Federal regulation. For example, in *United States v. Universal Management Services. Inc.*, 191 F.3d 750 (6th Cir. 1999), the court affirmed that defendants were required to offer full refunds to all customers who had purchased a pain-relieving device sold without FDA approval. The court rejected defendants' argument that consumers suffered no injury because the product performed as it was intended. *See Id.* Likewise, here, the Defendants' sold a product that the FDA has determined to be unmarketable and unsafe for its intended use, regardless of whether or not it has caused them to incur serious medical problems, to date.

[7] *See also In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 n. 40 (S.D. Fla. 2004)("The standards for evaluating each of the various states classes' unjust enrichment claims are…universally recognized as causes of action that are materially the same throughout the United States.")(internal quotations omitted); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998)("[P]revailing case law holds that at least two of Singer's state claims, breach of contract and unjust enrichment, are universally recognized causes of action that are materially the same throughout the United States."); *In re Pennsylvania Baycol Third-Party Payor Litig.*, No. 1874 Sept. Term 2001, 2005 WL 852135, at *6 (Pa. Com. Pl. Apr. 4. 2005)("All state laws commonly find unjust enrichment when a defendant wrongfully retains the money received from a sale when the defendant thereafter advises the consumer not to use the product because it may be unsafe.").

have suffered an injury.[8] Instead, the central element of unjust enrichment is the inequitable benefit conferred upon the Defendants under the totality of the circumstances. *Caseau v. Belisle*, No. PC 01-4441, 2005 R.I. Super. LEXIS 144, at *18 (R.I. Super. Sept. 26, 2005)("the measure of a defendant's gain rather than a plaintiff's loss.").[9] Stated otherwise, Plaintiffs need not allege any injury "except in the sense that a legally protected interest has been invaded." 1 George E. Palmer, *The Law of Restitution* § 2.10 (1978). In any event, as discussed further below, each of the Plaintiffs has already incurred real and substantial injuries and damages – from which the Defendants have reaped unjust and inequitable benefits.

Finally, Defendants argue that Plaintiffs' unjust enrichment claim fails "[b]ecause Defendants have no independent duty to inspect, repair, or replace the Composix Kugel Patches...." Deft's Memo at 9. That is beside the point. The allegation of a "duty" is not an element of an unjust enrichment claim. Nevertheless, even if it was necessary to allege that the Defendants breached a

[8] Defendants cite *Rhode Island Brd of Corr. Officers v. Rhode Island*, 264 F. Supp. 2d 87, 105-6 (D.R.I. 2003), as support for their assertion that an unjust enrichment claim cannot be maintained because the Plaintiffs have received the "benefit of their 'bargain'" with Defendants. That case involved correctional officers suing the state for retaining the "benefits" associated with the skills the officers gained through training and education. *Id.* In addition to the facts of that case being easily distinguishable from those here, the court did not hold that it was necessary, under Rhode Island law, to show actual injury; the court merely held that the plaintiffs had not demonstrated that the third element – inequity – was satisfied.

[9] In *Delahunt v. Cytodyne Teehs.*, 241 F. Supp. 2d 827 (S.D. Ohio 2003), for instance, the court denied defendants' motion to dismiss an unjust enrichment claim against the manufacturer of a dietary supplement containing ephedrine, despite defendants' argument that the complaint did "not plead that any member of the proposed class suffered a cognizable injury as a result of having taken [defendants' product]." *Id.* at 830-33. Plaintiffs alleged that ephedrine could cause a number of adverse health effects (including death) and by taking defendants' product, plaintiffs "placed themselves at risk of harm," and claimed entitlement to restitution of all economic benefit conveyed to defendants. *Id.* at 832. The court permitted the unjust enrichment claims to proceed, holding explicitly that plaintiffs' "claim[s] do[] not require [them] to plead an injury in excess of the harm inherent in the defendant's retention of a benefit under unjust circumstances." *Id.* at 836; *see also Guyana Tel. & Tel. Co. v. Melbourne Int'l Commons, Ltd.*, 329 F.3d 1241, 1249 (11th Cir. 2003) ("Restitution measures a plaintiffs recovery according to the defendant's, rather than the plaintiffs, rightful position."); *In re Pennsylvania Baycol*, 2005 Phila. Ct. Com. Pl. LEXIS 129, at *6 (certifying class on unjust enrichment claims based on defendants' wrongful retention of proceeds from sale of a product that defendants thereafter advised plaintiffs could be unsafe); *Blue Cross/Blue Shield*, 2006 WL 1241019, at *12 (certifying class in relation to unjust enrichment claims against drug manufacturer whose product had been recalled due to safety concerns); *Tesauro v. Quigley Corp.*, No. 1011, CONTROL 051340, 2002 WL 372947 (Pa. Com. PI. Jan. 25, 2002) (certifying class in relation to unjust enrichment claims against the manufacturer of an over-the-counter cold treatment). *In re Rezulin Products Liability Litigation*, 210 F.R.D. 61, 68 (S.D.N.Y. 2002)(Claim for unjust enrichment may be proven if "defendants' retention of the price they paid for the drug would be unjust .... ").

duty to the Plaintiffs, the Amended Complaint would satisfy this additional and unnecessary element of an unjust enrichment claim, as Plaintiffs allege breaches of duty throughout the Amended Complaint. Am. Compl. ¶¶ 33, 45, 48, 49, 50.

**C. The Amended Complaint Alleges That Plaintiffs Have Suffered Cognizable Injuries In Tort And Warranty.**

*1. Plaintiffs Have Alleged "Present" Injuries*

It is clear that Plaintiffs, who have not had their devices explanted, have adequately pleaded injury and/or alleged that the products were defective. Throughout the Amended Complaint, Plaintiffs allege that they have sustained, and will continue to sustain, injuries and damages as a result of Defendants' conduct. Am. Compl. ¶¶ 28, 29, 43, 51. Defendants' claim that the Plaintiffs have "no injury" ignores the express allegations of the Complaint. *This alone should end the analysis on the present motion.*

In addition, Defendants' claim that the device recipients Plaintiffs have suffered "no injury" ignores the fact that these Plaintiffs had to be cut open in order to have a defective device implanted in them. The physical injury represented by, and resulting from, implantation surgery itself satisfies any requirement for impact and bodily injury for traditional tort claims. *See Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 553 (Ill. 1983)(discussing the trivial showing required under the "impact" rule).[10]

Defendants argue that Plaintiffs must have their claims dismissed because they have not suffered physical injury or pecuniary loss. This is simply not the case. These Plaintiffs have, indeed,

[10] Even if physical impact is deemed necessary, courts have found that the impact requirement has been met through minor physical contacts which in reality were insignificant and played trivial or no part in causing harm to the plaintiff. *Id.* The requirement of "impact" often became purely formal, and it was satisfied by a slight jolt or jar (*Louisville & Nashville R.R. Co. v. Roberts*, 269 S.W. 333 (Ky. 1925); or "any degree of physical impact, however slight" (*Zelinsky v. Chimies*, 175 A.2d 351, 354 (Pa. 1961)); or even dust in the eye (*Porter v. Delaware, L. & W.R. Co.*, 63 A. 860 (1906)).

suffered "present injuries" and allege injuries based on the diminished value of the subject devices as well as the costs associated with the implantation of the subject devices; which are, at a minimum, sufficient to withstand Defendants' Motion.

In addition to the physical injuries associated with surgical implantation, and continued presence, of a defective product in their bodies, the Plaintiffs have sustained economic loss compensable under their implied warranty of merchantability claim. They paid for the devices, they have incurred medical costs of treatment as a result (indeed, the mere cost of going to a doctor to determine if a device should remain or be taken out would be *prima facie* economic loss), and they have ongoing treatment (including potential explant costs). That is proximate economic injury and economic loss under a breach of implied warranty of merchantability claim.

In *Thiedemann v. Mercedes-Benz USA, LLC,* 183 N.J. 234, 248, 872 A.2d 783 (2005), the New Jersey Supreme Court held that "it has been clear in this State that a person who purchases a defective product does not have to wait for the part to fail or make out-of-pocket expenditures for repairs in order to bring suit for fraud, consumer fraud or for *breach of a warranty*." (emphasis added).[11] There, the Court specifically held that a loss of the benefit of the bargain suffices to establish "ascertainable loss" and approvingly pointed out that sufficient proof of a lost bargain had been alleged in a case where like here, the defendant had manufactured an allegedly defective product (in that case, car tires), concealed the defect (in that case, by removing visible evidence of the defects), and had refused to examine the safety of the tires or to pay for their replacement. *Id. (citing Talalai v. Cooper Tire,* 360 N.J. Super. 547, 562-63 (Sup. Ct., Middlesex Co. 2001)).

Thus, and similarly, as the court explained in *Bridgestone,* [W]henever a consumer has received something other than what he bargained for, he has suffered a loss of money or property," *In re Bridgestone/ Firestone, Inc. Tires Products Liability Litigation,* 155 F. Supp. 2d 1069, 1097

[11] This decision has particular significance, as Defendant, Bard, is headquartered in New Jersey.

(S.D. Ind. 2001) *rev 'd in part on other grounds,* 288 F.3d 1012 (7th Cir. 2002)(*citing Hinchliffe v. American Motors Corp.,* 184 Conn. 607,440 A.2d 810,8]4 (Conn. 1981). Indubitably, Plaintiffs here have pled such injury and damages. In fact, plaintiffs respectfully submit that their claims are stronger; instead of owning defective car tires, plaintiffs unknowingly went under the knife only to have a device implanted that is the subject of a Class I recall.

Defendants' reliance (Def. Mem. 7-9) on *Briehl* v. *General Motors Corp.,* 172 F .3d 623 (8th Cir. 1999), is misplaced. Defendants conveniently forget that in *Briehl,* the plaintiffs "affirmatively state[d] that their purported class excludes any claim for personal injury or property damage caused by brake failure." 172 F.3d at 628. The same cannot be said of Plaintiffs' allegations here, where a product was put, not on their cars, but in their bodies without their - but with Defendants' - knowledge of its defective nature. Here, *per se* physical harm occurred to the body of each Plaintiff, from the very beginning. Plaintiffs have expressly - and understandably - alleged that Defendants' devices have caused injuries.

This case, unlike *Briehl,* is not a case where the plaintiffs merely claim that a fully functioning product "should have" been designed differently to make it more "user-friendly." This is a case where Defendants' devices have already failed, sometimes disastrously so, in a manner so well documented that the federal government was required to intervene to assure they were taken off the market.

Nor is this case comparable to *Khan* v. *Shiley Inc.,* 266 Cal. Rptr. 106 (Cal. App. 4 Dist. 1990) or the other cases that Defendants cite, many of which – including *Kahn* – were decided on summary judgment upon a factually developed record (as Defendants must concede); and claims of injury pursuant to physical implantation were not put forward (or, at least, not addressed) in a number of those decisions. Unlike heart valves, in which either "function continuously" or exhibit obvious

(sometimes disastrous) failures, a patch may have already failed, but that failure may be undetected for years and constant monitoring is required. Thus, many Plaintiffs may have inside their abdomens an already manifested defect, but will not discover that until it becomes possibly fatal.

Indeed, other courts have disagreed with Defendants' position on what is injury under tort and warranty law - both within the product area generally and as it specifically concerns implantable devices. Courts have rejected Defendants' contention that non-manifest defects are *per se* non-compensable in products defect cases. *See Bridgestone* 155 F. Supp. 2d 1069. In *Bridgestone,* the District Court, applying Michigan and Tennessee law, held that "there is no requirement that Plaintiffs demonstrate any injury to their person or property as a result of the breach, but only that they purchased an unmerchantable product." *Id.* at 1099. Many other States follow a similar rule. *See Kelly v. Sears Roebuck and Co.,* 308 Ill. App. 3d 633 (Ill. App. Ct. 1999); *Stroderd v. Yamaha Motor Corp., U.S.A.,* No. Civ. A. 04-3040, 2005 U.S. Dist. LEXIS 17797, at *3 (E.D. La. Aug. 4, 2005) (Louisiana redhibition claim); *In re Ford Motor Co. Bronco II Prods. Liability Litigation,* No. MDL-991, 1995 WL 491155 (E.D. La. Aug. 5, 1995) (same); *Coghlan v. Wellcraft Marine Corp.,* 240 F.3d 449 (5th Cir. 2001) (Florida and Texas law); *Microsoft Corp. v. Manning,* 914 S.W.2d 602, 609 (Tex. App. 1995).

The *Bridgestone* decision succinctly explained the fallacy of an argument virtually identical to that of Defendants here: "Defendants' argument assumes that the only way Plaintiffs can prove that the Tires are defective is by tread separation and that the only way Plaintiffs can prove that the Explorers are defective is by an active roll-over incident. However, *this is a factual assumption that is inappropriate for the Court to embrace in ruling on a motion to dismiss.*" *Bridgestone*, 155 F. Supp. 2d at 1100 (emphasis added). Thus, "Plaintiffs allege that the Tires and the Explorers are defective, and as Defendants cannot demonstrate as a matter of law that they are not, we shall assume

for purposes of this motion that they are. Therefore, Plaintiffs' claim for breach of implied warranty of merchantability will not be dismissed for failure to allege manifest injury." *Id.* at 1101. Here, Defendants would contend that the Plaintiffs can only show that the faulty devices it sold them are defective if the Plaintiffs suffer a serious injury or death. Just as the Explorer owners did not need to plead an injurious rollover at the motion to dismiss stage, Plaintiffs here should not be required to die in order to secure the benefit of Defendants' warranty.

This issue was addressed directly in *Larsen* v. *Pacesetter Systems, Inc.,* 74 Haw. 1 (1992), in which the Hawaii Supreme Court concluded that "neither the tort nor the warranty formulations of the test for product defectiveness heretofore enacted by the legislature or adopted by this court require that a product actually malfunction." *Id.* at 24. Defendants' blithe contention that plaintiffs' claims would probably fail anywhere is manifestly wrong.

Furthermore, as to warranty claims, the defects at issue render the devices less valuable, regardless of any propensity to cause injury, and this difference in value is compensable under a warranty theory. *Coghlan* v. *Wellcraft Marine Corp.,* 240 F.3d 449, 452 (5th Cir. 2001) (the measure of damages under the Uniform Commercial Code "is neither novel nor exotic"). This common sense measure of damages is written into the Uniform Commercial Code itself: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." U.C.C. § 2-714(2).[12]

The U.C.C. only requires a buyer to allege that goods were not as warranted; no allegation of personal injury is required. In *Muehlbauer v. General Motors Corp.,* 431 F. Supp.2d 847, 871 (N.D.

[12] *Briehl's* apparent rejection of a similarly stated measure of damages as "too speculative," reflects either the fact that proper argument based on the U.C.C. was not made to the Comi, or, as suggested by the district court in *Bridgestone,* "is simply another way of saying that the products were, in fact, merchantable, and therefore there was no breach of warranty." 155 F. Supp. 2d at 1100.

Ill. 2006), for instance, the court permitted claims to go forward on behalf of plaintiffs who had "experienced the defect," even if they had not suffered personal injuries. For purposes of a warranty claim, Plaintiffs are aware of no case that requires, as Defendants imply, that the product contain manifest defects *and* causes personal injury before a claim for breach of the implied warranty of merchantability can be asserted: tort is not a prerequisite of breach of warranty, or vice versa.

2. *Damages For Emotional Harm Alone Are Recoverable In Tort And Warranty Theories.*

Even putting aside the fact that Plaintiffs have adequately alleged injury and defects for purposes of their tort and warranty claims, this Court should deny Defendants' motion because the damages can be awarded for emotional harm in a case like this - pursuant to negligence and warranty theories. Even in the jurisdictions that require physical injury, like Rhode Island,[13] it cannot be said beyond doubt that Plaintiffs can prove no set of facts that supports claims of injury. *See Hoffinan v. Stamper,* 385 Md. 1,867 A.2d 276 (Md. 2005) (real property purchaser's testimony that whenever he began thinking about the problems resulting from the fraudulent scheme, he would get headaches and would vomit, was sufficient to show some objectively ascertainable accompanying or consequential physical injury to permit recovery of non-economic damages for emotional injury).[14] The implantation surgery of the device, its continued presence in the Plaintiffs' bodies, and the

[13] While Rhode Island does require some showing of "injury" associated with a plaintiff's emotional harm, *Reilly v. United States*, 547 A.2d 894, 896 (R.I. 1988), many states allow for claims in tort and warranty for purely emotional harm. For example, in *Larsen, supra,* in addition to holding that a claim for an implantable cardiac device under tort or warranty law does not require actual malfunction, the Hawaii Supreme Court also held that emotional distress damages were recoverable "in implied warranty, strict products, and negligence actions," and attributed the same views to Iowa and other States. *Larsen,* 837 P.2d at 1294. Likewise, while Alabama, for example, does not recognize a separate tort of negligent infliction of emotional distress, under Alabama law damages for emotional distress may be awarded in a negligence case, even in the absence of physical injury. *Flagstar Enters., Inc.* v. *Davis,* 709 So.2d 1132, 1141 (Ala. 1997).

[14] Maryland, like a number of jurisdictions outlined above, does not recognize the separate and distinct tort of negligent infliction of emotional distress. *See Lapides v.* Trabbic, 134 Md. App. 51,758 A.2d 1114,1122 (Md. Ct. Spec. App. 2000). Nevertheless, recovery may be had in a tort action for emotional distress arising out of negligent conduct. In such case, the emotional distress is an element of damage, not an independent tort." *Hamilton v. Ford Motor Credit Co.,* 66 Md. App. 46, 502 A.2d 1057, 1066 (Md. 1986).

subsequent treatment that will be necessary, satisfy any such requirement.

### 3. *Plaintiffs Will Continue To Incur Injuries And Damages*

The allegations of injury discussed above are sufficient to survive this motion. However, they are not the only injuries and damages that the Plaintiffs will incur. While Rhode Island has not yet addressed the issue, numerous other courts, have recognized a Plaintiff's right to be compensated for the ongoing medical costs associated with a defective product, by allowing for recovery of medical monitoring costs.[15]

As an initial matter, the most salient point is that this is a Rule 12 motion; accordingly, the complaint allegations govern. Here, the Amended Complaint asserts that "Plaintiffs and Class members have sustained and will continue to sustain damages, and are therefore entitled to compensatory damages and equitable and declaratory relief according to proof." Am. Compl. ¶ 51. As Plaintiffs must receive additional medical monitoring in order to safeguard their lives and their health, this case presents a prototypical case for medical monitoring, logically, legal and equitably. Furthermore, because of the significantly increased risk of death and injury that Defendants have imposed on Plaintiffs with its defective implants, it is only fair – legally as well as economically – that Defendants bear the burden of their own wrongful conduct.

### 4. *Numerous Federal And State Courts Have Recognized Claims In Similar Cases*

Numerous courts have considered claims of medical monitoring, and have recognized its viability because of the necessity of taking reasonable steps to limit the injuries caused by defective medical devices, products, hazardous substances, or disastrous events. *See, e.g. Burns v. Jacqays*

---

[15] In the seminal decision *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816 (D. C. Cir. 1984), the defining medical monitoring case, the triggering event was airplane cabin depressurization and emergency landing. No toxics were involved. The *Diet Drug* multi-state medical monitoring class certification decision involved prescription drugs. *In re Diet Drugs Prods. Liab. Litig.*, 1999 U.S. LEXIS 13228 (E.D. Pa.). The *Telectronics* multi-state medical monitoring class certification involved heart devices - pacemaker lead wires. *In re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271 (S.D. Ohio 1997).

*Min. Corp.*, 752 P.2d 28, 33 (Ariz. Ct. App. 1987) (upholding medical monitoring claim absent present physical injury because "compensation for reasonable and necessary medical expenses is consistent with well accepted legal principles. It is also consistent with the important public health interest in fostering access to medical testing for individuals whose exposure to toxic chemicals creates an enhanced risk of disease.")(internal citations omitted).[16] Moreover, at least 13 states, plus the District of Columbia and Guam, specifically recognize medical monitoring damages. *See Burns,* 752 P.2d at 33.[17] Neither speculative nor resistant to proof, it is equitable and just that the Defendants should make the Plaintiffs whole by paying for their examinations. *In re Paoli,* 916 F.2d at 850 ("The injury in a medical monitoring claim is the cost of the medical care that will, one hopes, detect that injury."). Indeed, it seems elementary that the law allows for a victim who has a device in them that has knowingly caused death in others should have the wrongdoer pay for the victim's

[16] *See also, Friends for All Children,* 746 F.2d at 824 (airplane cabin depressurization) ("In light of general principles of tort law, the *Restatement (Second) of Torts,* and the law of other jurisdictions, we believe that the District of Columbia Court of Appeals would recognize [a cause of action for diagnostic examinations without proof of actual injury]"); *In re Paoli R.R. Yard PCB Litig.,* 916 F .2d at 852 ("[T]he Supreme Court of Pennsylvania would follow the weight of authority and recognize a cause of action for medical monitoring....Medical monitoring claims acknowledge that, in a toxic age, significant harm can be done to an individual by a tort or, notwithstanding latent manifestation of that harm."), *cert. denied,* 499 U.S. 961 (1991); *Patton v. General Signal Corp.,* 984 F. Supp. 666, 674 (W.D.N.Y. 1997) (stating that there is "a growing national acceptance of . . . a claim [for medical monitoring], and [one] would be embraced by the New York Court of Appeals") (internal citations omitted); *Potter v. Firestone Tire & Rubber Co.,* 863 P.2d 795, 823 (Cal. 1993) (holding that "a reasonably certain need for medical monitoring is an item of damage for which compensation should be allowed"); *Lockheed Martin Corp. v. Superior Court,* 63 P.3d 913 (Cal. 2003), *aff'd,* 94 Cal. Rptr. 2d 652 (Cal. Ct. App. 2000) (no *per se* prohibition of class certification of medical monitoring claims); *Petito v. A.H. Robins Co.,* 750 So.2d 103, 106 (Fla. Dist. Ct. App. 1999) (holding that Florida recognizes a cause of action for medical monitoring when the party seeking relief has yet to develop any identifiable physical injuries or symptoms); *Lewis v. Lead Industries Ass 'n,* 793 N .E.2d 869, 873 (Ill. App. Ct. 2003) (holding that "cost of diagnostic testing to detect a possible injury, which testing was made necessary by a defendant's breach of duty, is in itself a present injury compensable in a tort action."); *Cook v. Rockwell Int'l. Corp.,* 755 F. Supp. 1468, 1476-77 (D. Colo. 1991) (recognizing claim for medical monitoring in absence of present physical injury); *see also Ayers,* 525 A.2d at 313; *Bower v. Westinghouse Electric Corp.,* 522 S.E.2d 424,430-31 (W.Va. 1999).

[17] *See also, Potter,* 863 P.2d at 823; *Cook,* 755 F. Supp. at 1476-77; *Martin v. Shell Oil Co.,* 180 F. Supp. 2d 313, 322-23 (D. Conn. 2002); *Friends for All Children,* 746 F.2d at 824 (children who could have suffered hidden brain damage in an accident held entitled to defendant-funded diagnostic exams to determine whether injury existed); *Petito,* 750 So. 2d at 106; *Abuan v. Gen. Elec. Co.,* 3 F.3d 329,334-335 (9th Cir. 1992), *cert. denied,* 510 U.S. 1116 (1994); *Lewis,* 793 N.E.2d at 873; *Lamping v. Am. Home Prods., Inc.,* No. DV-97-85786 (Mont. 4th Dist. Ct. Feb 2, 2000); *Ayers v. Jackson,* 525 A.2d 287, 313 (N.J. 1987); *Patton,* 984 F. Supp. at 674; *Day,* 851 F. Supp. at 879-81; *Redland Soccer Club v. Dep't of the Army,* 696 A.2d 137, 143-46 (Pa. 1997); *Hansen v. Mountain Fuel Supply Co.,* 858 P.2d 970, 976-77 (Utah 1993); *Bower,* 522 S.E.2d at 430-31.

medical care, including those costs associated with monitoring their condition. To allow otherwise would add insult to injury.

Courts have specifically recognized medical monitoring in the context of defective devices and medical products. Not surprisingly, courts have repeatedly recognized the existence of claims for the monitoring of defective medical devices implanted into individuals, as well as hazardous substances such as asbestos. These cases include claims about defective pacemakers, heart valves, stent grafts, and prosthetic hips.[18] The holdings in the foregoing cases apply with particular force in this case, where the FDA has expressly stated that most of the devices at issue in this litigation pose a "reasonable probability" of causing serious injury or death.

## VI.

## CONCLUSION

In short, Defendants have not shown that Plaintiffs have not set forth cognizable claims and their motion must fail. For the reasons states above, Plaintiffs respectfully requests that this Honorable Court for the entry of an order denying Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Class Action Complaint.

---

[18] *In re Telectronics Pacing Systems, Inc.,* 172 F.R.D. 271, 295 (S.D. Ohio 1997) (certifying medical monitoring subclasses in products liability case involving defective pacemakers lead wires already implanted in plaintiffs); *In re St. Jude Medical, supra,* 425 F.3d at 1121-22 (recognizing, at least, by necessary implication, various state law claims for medical monitoring in case involving defective heart valve implanted in class of patients); *In re Inter-Op Hip Prosthesis Liability Litigation,* 204 F.R.D. 330,349 (N.D. Ohio 2001) (approving settlement and certifying medical monitoring class of individuals who had received hip implants but who had not yet rejected the implant or had the implant replaced). *See also, In re Prempro,* 230 F.R.D. 555, 570-71 (E.D. Ark. 2005) (recognizing existence of medical monitoring claim for a hormone replacement therapy drug which was still approved by the FDA and still on the market); *Petito,* 750 So.2d at 104 (Phen-Fen; recognizing that "a cause of action for medical monitoring when the party seeking relief has yet to develop any identifiable physical injuries or symptoms"); *In re W Va. Rezulin Litig.,* 585 S.E.2d 52, 73 (W. Va. 2003) (reversing lower court's denial of class certification of medical monitoring claims).

Dated: May 17, 2007

/s/ Donald A. Migliori

Donald A. Migliori (#4936)
MOTLEY RICE LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940-6067
401-457-7700
401-457-7708 FAX

Teresa C. Toriseva
WEXLER TORISEVA WALLACE LLP
1446 National Road
Wheeling, WV
304-238-0066
304-238-0149 FAX

Edward A. Wallace
Mark R. Miller
WEXLER TORISEVA WALLACE LLP
One North LaSalle Street, Suite 2000
Chicago, Illinois 60602
312-346-2222
312-346-0022 FAX

Fred Thompson, III
Rhett D. Klok
Fred Thompson
Henry Leventis
Carmen Scott
MOTLEY RICE LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
843-216-9000
843-216- 9450 FAX

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2007, a copy of the foregoing Plaintiffs' Memorandum In Opposition To Defendants' Rule 12(b)(6) Motion To Dismiss Plaintiffs' First Amended Class Action Complaint was filed in the United States District Court for the District of Rhode Island and served electronically on all counsel of record in this matter.

/s/ Donald A. Migliori

Donald A. Migliori